# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**VIVIAN BURKE-FOWLER,**

**Plaintiff,**

**-vs-**                                                    **Case No.  6:04-cv-25-JA-DAB**

**ORANGE COUNTY, FLORIDA,**

**Defendant.**
_____

# ORDER

Plaintiff was discharged from her employment as a correctional officer with Orange County, Florida ("the County"), after it was discovered that she had an intimate relationship with, and married, an inmate.   Plaintiff has filed this lawsuit alleging the termination constitutes racial discrimination in violation of 42 U.S.C. § 2000e et seq. (Title VII) and 42 U.S.C. § 1981.  In addition, Plaintiff alleges that the County violated section 760.10, Florida Statutes, because her marital status formed a basis for the termination.

This case is currently before the Court on Defendant's Dispositive Motion for Summary Judgment. (Doc. 33, filed April 1, 2005).  Plaintiff has filed a Response Requesting Denial of Defendant's Motion for Summary Judgment (Doc. 43, filed April 21, 2005), as well as a memorandum of law in support thereof. (Doc. 44, filed April 21, 2005).   Upon consideration of the record in this matter and pertinent case law, the Court concludes that Defendant's Motion for Summary Judgment must be granted as to all of Plaintiff's claims.

I. Background

The County employs correctional officers for the purpose of monitoring inmates. Plaintiff, who is African-American, began her employment as a certified correctional officer with the County Corrections Department in 1987.  (Doc. 43 ¶ 2).  Plaintiff was assigned to the Municipal Justice Building Annex in 1993, and she worked there as a correctional officer until the Annex closed in June 1999.  (Doc. 43 ¶ 2).  The County terminated Plaintiff's employment in June 2002 after discovering that she had married Douglas Fowler, formerly an inmate at the Municipal Justice Building Annex.

In 1984, Fowler was convicted on charges of murder and robbery and was sentenced to life in prison under the supervision of the Florida Department of Corrections.  For purposes of post-conviction litigation, the Florida Department of Corrections transferred custody of Fowler to the Orange County Corrections Department in January 1999. (Doc. 43 ¶ 4).  With the exception of a two-week period during May 1999, Fowler was continuously incarcerated at the County Municipal Justice Building Annex from January 1999 until June 1999.  (Doc. 43 ¶ 5).  During this period, Plaintiff was one of the correctional officers responsible for monitoring Fowler and the other inmates at the Annex.  Plaintiff does not recall how many times she interacted with Fowler during these approximately six months.   She does, however, specifically recall having a conversation with Fowler regarding a mutual acquaintance and the possibility that she may have met Fowler during the early 1980s. (Burke-Fowler Dep., Doc. 34 at 70-73, 76, 77, 81, 84, 86, 87).

After the County Municipal Justice Building Annex was closed in June 1999, Plaintiff was transferred to a different county facility.  (Burke-Fowler Dep., Doc. 34 at 45-46).  In

August 1999, Fowler was returned to Okeechobee Correctional Institution, where he remained until he was released on parole in January 2002.  (Doc. 43 ¶ 5; Burke-Fowler Dep., Doc. 34 at 110, 140).

According to Plaintiff, she received a letter from Fowler at her home in November of 1999.  (Burke-Fowler Dep., Doc. 34 at 96, 97).  Between November 1999 and January 2002, Plaintiff exchanged letters with Fowler, accepted collect telephone calls from him, sent him money, and visited him at Okeechobee Correctional Institution.  (Doc. 43 ¶ 7).  Plaintiff married Fowler in November 2000 at Okeechobee Correctional Institution.  (Doc. 43 ¶ 8).

In March 2002, in response to a direct question from one of her supervisors, Plaintiff indicated that she had married a former inmate.  (Doc. 43 ¶ 9).  Thereafter, the County Corrections Department began investigating whether Plaintiff had violated a rule prohibiting fraternization with inmates.  The investigator interviewed Plaintiff and reviewed records pertaining to her visits to Okeechobee Correctional Institution, her financial transfers to Fowler, and her marriage to Fowler.  (Aff. of Michael Todd, Doc. 37, at 3, 21-23).  The investigator concluded that Plaintiff had violated several applicable policies.  (Aff. of Michael Todd, Doc. 37, at 21-23).  On June 4, 2002, the County terminated Plaintiff's employment.  (Doc. 43 ¶ 21).

Plaintiff immediately filed a grievance with the County challenging the termination.  (Doc. 43 ¶ 22).  Between July and December 2002, the County held a grievance hearing and two grievance appeal hearings to review the decision to terminate Plaintiff.  (Doc. 43 ¶¶ 23-27).  At each of these three proceedings, the reviewing body upheld the termination.  (Doc. 43 ¶¶ 23-27).  During June 2003, Plaintiff and the County engaged in arbitration

proceedings, and the arbitrator also upheld the County's decision to terminate Plaintiff's employment.  (Doc. 43 ¶ 28).

Sometime after the arbitration hearing, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations.  (Doc. 2 at 12).  The EEOC referred the matter to the United States Department of Justice, which notified Plaintiff that the United States would not file suit on her charge of discrimination.  (Doc. 2 at 11).

On December 22, 2003, Plaintiff filed the instant Complaint against the County in state court.  On January 7, 2004, the County removed the case to this Court.  (Doc. 1).

II. Legal Discussion

A. Summary Judgment Standards

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of establishing that no genuine issues of material fact remain.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

-4-

proof at trial." <u>Celotex</u>, 477 U.S. at 322.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.  "[T]he summary judgment rule applies in job discrimination cases just as in other cases.  No thumb is to be placed on either side of the scale." <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1026 (11th Cir. 2000).

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." <u>Gargiulo v. G.M. Sales, Inc.</u>, 131 F.3d 995, 999 (11th Cir. 1997).  "The evidence presented cannot consist of conclusory allegations or legal conclusions." <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991); <u>see also</u> Fed. R. Civ. P. 56(e) (providing that the nonmovant's response "must set forth specific facts showing that there is a genuine issue for trial").

### B. The Merits of The County's Motion

### i. Plaintiff's Claim of Discriminatory Discharge on the Basis of Race

Plaintiff contends that the County terminated her employment because of her race (African-American), in violation of 42 U.S.C. § 2000e <u>et seq.</u> (Title VII) and 42 U.S.C. § 1981.[1]  Because Plaintiff has not presented any direct evidence of racial discrimination, she

---

[1] The same analysis applies to Plaintiff's discriminatory discharge claim under both Title VII and 42 U.S.C. § 1981.  <u>See, e.g.</u>, <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both [Title VII and 42 U.S.C. § 1981] have the same requirements of proof and use the same analytical framework[;] therefore we shall explicitly address the

must rely on the burden-shifting framework established by <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and its progeny to support her discriminatory discharge claim through circumstantial evidence.  <u>See, e.g.</u>, <u>EEOC v. Joe's Stone Crab, Inc.</u>, 220 F.3d 1263, 1286 (11th Cir. 2000) ("Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence. . . . Absent direct evidence, a plaintiff may prove intentional discrimination through the familiar <u>McDonnell Douglas</u> paradigm for circumstantial evidence claims."); <u>accord</u> <u>Harris v. Sec'y of the Army</u>, 119 F.3d 1313, 1320 (8th Cir. 1997) ("Because she has no direct evidence of discrimination, [plaintiff's] sex discrimination claim is governed by the burden shifting analysis first articulated in <u>McDonnell Douglas Corp. v. Green</u>.").

Under the <u>McDonnell Douglas</u> framework, the plaintiff in a disparate treatment case has the initial burden to establish a prima facie case of discrimination.  411 U.S. at 802.  As the Eleventh Circuit has noted, "[d]emonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997).  If the plaintiff establishes a prima facie case, a presumption of discrimination arises.  <u>See, e.g.</u>, <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248 (1981).

If the plaintiff has presented a prima facie case, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its action.  <u>McDonnell Douglas</u>,

---

Title VII claim with the understanding that the analysis applies to the § 1981 claim as well."); <u>accord</u> <u>Patton v. Indianapolis Pub. Sch. Bd.</u>, 276 F.3d 334, 338 (7th Cir. 2002) ("Discrimination claims under both Title VII and § 1981 are analyzed in the same manner.").

411 U.S. at 802.  The employer's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).  If the employer meets its burden of production, "'the McDonnell Douglas framework – with its presumptions and burdens' – disappear[s], and the sole remaining issue [is] 'discrimination vel non.'" Reeves, 530 U.S. at 142-43 (quoting St. Mary's Honor Ctr., 509 U.S. at 510, and U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)).  To prevail on a claim of disparate treatment, the plaintiff must establish that the employer acted with a discriminatory animus.  Edwards v. Wallace Cmty. Coll., 49 F.3d 1517 (11th Cir. 1995) (citing Burdine).

To make a prima facie showing of discriminatory discharge under Title VII, a plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified for her job; (3) she was discharged; and (4) someone outside of her protected class filled the vacancy created when she was discharged.  Edwards, 49 F.3d at 1521.  Alternatively, the plaintiff can meet the fourth element of the prima facie case by showing "differential application of work or disciplinary rules."  Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Spivey v. Beverly Enters., Inc., 196 F.3d 1309, 1312 (11th Cir. 1999).  The County does not dispute that Plaintiff is a member of a protected class, that she was qualified for her job, or that she was discharged.  However, the County contends that Plaintiff has not satisfied the fourth element of her prima facie case.

The County argues that Plaintiff cannot establish "differential application of work or disciplinary rules" because she has not produced any evidence that a County correctional officer outside of her protected class engaged in "nearly identical" misconduct, yet received

discipline less severe than termination.  <u>See</u> <u>Nix</u>, 738 F.2d at 1185; <u>Maniccia v. Brown</u>, 171 F.3d 1364, 1368 (11th Cir. 1999).  According to the County, Plaintiff is "the only correctional officer who was found to have initiated an intimate romantic relationship with a known incarcerated murderer, soon after the inmate had been under her direct supervision, and later married that inmate while he was incarcerated in state prison – all in secret and hidden from her friends, colleagues, and supervisors."  (Doc. 34 at 12).

In response, Plaintiff states that she has identified a group of correctional officers with a common characteristic: the County has pursued disciplinary action against them for fraternizing with an inmate.  According to Plaintiff, she has established a prima facie case of discrimination because the County discharged her but did not discharge white members of the group.  <u>See</u> <u>Alexander v. Fulton County</u>, 207 F.3d 1303, 1334 (11th Cir. 2000) (indicating that "the law only requires 'similar' misconduct from the similarly situated comparator").  Generally, according to Plaintiff, the County Corrections Department terminates the employment of minority correctional officers who fraternize with inmates, but metes out less severe discipline (such as a suspension or written reprimand) to white correctional officers who fraternize with inmates.

To support her claim of disparate treatment, Plaintiff specifically alleges that the County did not discharge Cynthia Robinson, a white correctional officer, despite her "relationship with an inmate."  (Doc. 2 at 12).  Plaintiff, however, does not contest the County's conclusion that Ms. Robinson had developed the relationship without knowledge of her partner's criminal history.  (Doc. 43 ¶¶ 29, 30).  In addition, the County indicates that Ronald Austin, a white correctional officer, was disciplined but not terminated after admitting

to an investigator that he had a close personal relationship with a woman before and during her incarceration. (Doc. 33 ¶ 34). Plaintiff subsequently introduced Mr. Austin's disciplinary file (attached to Doc. 43), which reveals the County's determination that Mr. Austin had established his relationship with the woman prior to her arrest.

Plaintiff has not presented evidence that the County Corrections Department has applied its disciplinary rules differently based on race. Unlike correctional officers Robinson and Austin, who had existing relationships with people who were later convicted, Plaintiff developed a close relationship with a person she knew to be a convicted criminal. Plaintiff is unable to identify any Orange County correctional officer who engaged in misconduct similar to hers, yet received a discipline less severe than termination. Consequently, Plaintiff has not established a prima facie case of discriminatory discharge, and the County is entitled to summary judgment on Plaintiff's Title VII claim.

Even if Plaintiff had established her prima facie case, the County has articulated a legitimate, nondiscriminatory reason for terminating her employment, and Plaintiff has not raised a factual issue as to whether that reason was pretextual. See, e.g., Chapman v. Al Transport, 229 F.3d 1012, 1025 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim."); accord Evans v. McClain of Ga., Inc., 131 F.3d 957, 964-65 (11th Cir. 1997) ("Under the established rule of law in this Circuit, a plaintiff can survive a motion for summary judgment or for judgment as a matter of law by presenting evidence sufficient

to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons.").

The County indicates that Plaintiff was discharged because she violated one or more rules which prohibit fraternization with inmates.[2]  In his affidavit, Sergeant Todd states that he interviewed Plaintiff and she admitted to communicating with inmate Fowler approximately 20 times while they were both at the County Municipal Justice Building Annex. (Aff. of Michael Todd, Doc. 37 at 21-23).  Sergeant Todd also gathered evidence that, while Fowler was incarcerated at Okeechobee Correctional Institution between November 1999 and January 2002, Plaintiff exchanged letters with inmate Fowler, accepted collect telephone calls from him, sent him money, visited him, and married him.  (Aff. of Michael Todd, Doc. 37 at 21-23).   Thus, the County has met its burden of articulating a legitimate, nondiscriminatory reason for discharging Plaintiff.

Plaintiff contends that she did not violate any of the policies the County has cited.  Her primary argument is two-fold.  First, according to Plaintiff, even if she engaged in any inappropriate activity with inmate Fowler, such interaction did not occur while she had direct authority over him at the County Municipal Justice Building Annex.  Second, Plaintiff's

_____

[2] The most specific language the County relies upon to support its articulated reason for discharging Plaintiff is found in subsections IV.A.1.p. and IV.A.1.q. of the County Corrections Department's Code of Ethics.  (Doc. 34, Ex. 7 at 7-10).  This portion of the Code begins by establishing that "[e]mployees who violate these standards will be subject to corrective action, which range from a memo to file to termination." (Doc. 34, Ex. 7 at 8).  Subsection 1.p. states that "[e]mployees will not . . . [f]raternize with inmates, clients or residents."  (Doc. 34, Ex. 7 at 10).  Subsection 1.q. states that "[e]mployees will not . . . [c]orrespond, call or receive phone calls from inmates, clients or residents without prior written approval of your Department Manager."  (Doc. 34, Ex. 7 at 10).

understanding of the policy was that she could not fraternize with inmates at the correctional facility where she worked, but that she could fraternize with inmates who are incarcerated at other correctional institutions. The County, by contrast, states that its anti-fraternization rule applies regardless of the facility at which an inmate is incarcerated.

To raise a genuine issue of material fact as to pretext, Plaintiff must cast doubt on whether the County honestly believed that she violated the policy. Abel v. Dubberly, 210 F.3d 1334, 1338 (11th Cir. 2000); Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989). The reasonableness of the employer's disciplinary policies is not an issue so long as those policies are not discriminatory. Abel, 201 F.3d at 1338 n.5; see also Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'") (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988)).

Plaintiff has stated her own personal understanding of the anti-fraternization rule, but she has not challenged the County's assertion that it interpreted the rule in a different manner. Abel and Jones make clear that, where  an employer and an employee have different interpretations of a disciplinary rule, there is a rebuttable presumption that the employer did in fact believe its asserted interpretation.

To rebut this presumption, and to raise a genuine issue of material fact for trial, Plaintiff "must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find [all of those reasons] unworthy of credence.'" Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1333 (11th Cir. 1998) (quoting Combs v.

Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)).   For example, a plaintiff

challenging the application of a disciplinary rule could demonstrate that the employer, in prior

disciplinary actions, interpreted the rule in a manner that is inconsistent with its present

interpretation.  By merely alleging that her understanding of the rule differs from that of the

County, Plaintiff has failed to present evidence to create a genuine issue of fact as to

whether the County's proffered reason for her termination is pretextual.  Accordingly, even

if Plaintiff had established a prima facie case of discrimination, summary judgment would be

entered for the County on Plaintiff's Title VII claim.

> ii. Plaintiff's Claim of Unlawful Discrimination Based on Marital Status

In addition to her claim of racial discrimination, Plaintiff claims the County discharged

her in violation of § 760.10, Florida Statutes.  Section 760.10 establishes, among other

things, that adverse employment action is unlawful in Florida when taken because of the

employee's marital status.  Plaintiff contends the County terminated her employment as a

corrections officer because she married inmate Fowler.  The County disputes Plaintiff's

allegation that she was discharged because of her marital status.

As a preliminary matter, 28 U.S.C. § 1367(a) confers subject matter jurisdiction upon

this Court to hear and decide the state-law claim.  Because both of Plaintiff's discrimination

claims arise from the County's decision to terminate her employment as a correctional

officer, the federal and state law claims "form part of the same case or controversy," as

section 1367(a) requires.

Plaintiff's claim of discrimination based on marital status is without merit.  Plaintiff

alleges that the County violated § 760.10, Florida Statutes, because it terminated her

employment based on her marriage to an inmate.  However, "the term 'marital status' as used in section 760.10 of the Florida Statutes means the state of being married, single, divorced, widowed or separated, and does not include the specific identity or actions of an individual's spouse." Donato v. American Tel. & Tel. Co., 767 So. 2d 1146, 1155 (Fla. 2000). Plaintiff seeks protection under the statute based on the identity of her spouse, and the Florida Supreme Court has refused to extend such a protection. Id. Accordingly, the Court grants the County's Motion for Summary Judgment as to Plaintiff's claim of discrimination based on her marital status.

### III. Conclusion

In accordance with the foregoing analysis, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Dispositive Motion for Summary Judgment (Doc. 33, filed April 1, 2005) is **GRANTED** as to all of Plaintiff's claims.

2. All other pending motions are **DENIED as moot**.

3. The clerk is directed to enter judgment for Defendant Orange County, Florida, in accordance with this Order and thereafter to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 30th day of June, 2005.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record