**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**VIVIAN BURKE-FOWLER,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:04-cv-25-Orl-28DAB**

**ORANGE COUNTY, FLORIDA,**

        **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:   DEFENDANT, ORANGE COUNTY, FLORIDA'S RENEWED MOTION FOR ATTORNEYS' FEES, COSTS, AND SANCTIONS (Doc. No. 91)**
>
> **FILED:   August 29, 2005**
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

Plaintiff sued Orange County for claims of race and marital status discrimination arising from termination of her employment as a correctional officer for Orange County, after it was discovered that she had an intimate relationship with, and married, an inmate. Judge Antoon granted summary judgment to Orange County on June 30, 2005, holding that Plaintiff failed to show the County's proffered reason for her termination was pretextual or that the County applied its disciplinary rules

differently based on race.  Doc. No. 73.  Judge Antoon also held that Plaintiff could not assert a state law claim for discrimination based on her marriage to an inmate.  Doc. No. 73.

On August 29, 2005, the County filed its Renewed Motion for $111,694 in attorneys' fees pursuant to Title VII[1], the Florida Civil Rights Act[2], and 28 U.S.C. § 1927, contending that Plaintiff's claims were frivolous, unreasonable, without foundation, and the litigation unreasonably multiplied by Plaintiff's counsel.  While the County did prevail at the summary judgment stage of these proceedings, the Court concludes that the County's argument that Plaintiff's case was frivolous or without foundation overstates the district court's summary judgment ruling and ignores the evidence of white corrections officers who were romantically involved with inmates, albeit under different circumstances, who were treated differently.  Plaintiff's prosecution of this action does not warrant an award of attorney's fees.

**Attorneys' Fees against Plaintiff**[3]

The American Rule provides that in the absence of legislation providing otherwise, each party must pay their own attorney's fees.  *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 244 (1975).  Section 2000e-5(k) of Title 42, U.S.C., provides that, in a Title VII action, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.  Although under this provision a prevailing plaintiff generally receives her attorneys' fees as a matter of course, equitable considerations call for a different standard for an award of attorneys' fees to a defendant in a civil rights action.  When the prevailing party is the defendant, public policy concerns support a

---

[1] 42 U.S.C. § 2000e-5(k).

[2] Fla. Stat. § 760.11(5).

[3] The County also sought reimbursement of costs of $5,885.60, which were taxed by the Clerk on July 15, 2005.  *See* Doc. No. 80.

more stringent standard than merely winning the suit. In such a case, the Court may award fees to a prevailing defendant if the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978) (civil rights case). The FCRA also authorizes an award of reasonable attorneys' fees to the prevailing party in a civil action brought under the Act and, this attorney's fee provision is to be interpreted in conformity with federal case law construing entitlement to attorneys' fees under Title VII. Fla. Stat. § 760.11(5). *Scelta v. Delicatessen Support Services, Inc.,* 146 F.Supp.2d 1255, 1261 n.5 (M.D. Fla. 2001); *Florida Dep't of Community Affairs v. Bryant*, 586 So.2d 1205, 1209 (Fla. 1991).

"Frivolous" or "without foundation" means more than the fact that a plaintiff may ultimately lose his case. *Hughes v. Rowe*, 449 U.S. 5 (1980). Frivolous means "so lacking in arguable merit as to be groundless or without foundation." *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985); *Jerelds v. The City of Orlando*, 194 F. Supp.2d 1305 (M.D. Fla. 2002) *aff'd*, 251 F.3d 164 (11th Cir. 2001). In determining whether to assess attorney's fees, the court must examine 1) whether the Plaintiff established a *prima facie* case, 2) whether the Defendant offered to settle[4], and 3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. *Sullivan*, 773 F.2d at 1189.

As for the asserted liability of Plaintiffs' counsel, Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required

---

[4] The County offered to agree to a dismissal of the case, with the parties to pay their own costs and fees. Doc. No. 91-1 at 8. The County has now taken a more aggressive stance and filed its Motion seeking in excess of $111,000 in attorney's fees and expenses. Doc. No. 91-1.

> by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The County contends that they are entitled to attorneys' fees against Plaintiff pursuant to Title VII (42 U.S.C. § 2000e-5(k)) and against Plaintiff's counsel pursuant to 28 U.S.C. § 1927 because this suit was both frivolous and vexatious.

### § 1927 Sanction against Counsel

In order to justify an imposition of sanctions under this section, three requirements must be observed: 1) an attorney must engage in "unreasonable and vexatious" conduct; 2) such conduct must "multiply the proceedings; and 3) the amount of the sanctions cannot exceed the costs incurred due to the conduct. *Jerelds,* 194 F. Supp. 2d at 1312 (citing *McMahan v. Toto,* 256 F. 3d 1120, 1128 (11th Cir. 2001)). The meaning of "unreasonable and vexatious" is subject to interpretation but "at [a] minimum . . . merely unintended, inadvertent, and negligent acts will not support the imposition of sanctions under § 1927; [r]ather, the power to impose sanctions under § 1927 should be exercised 'only in instances of a serious and studied disregard for the orderly processes of justice.'" *Jerelds*, 194 F. Supp. 2d at 1312, 1315 (collecting cases; internal citations omitted).

### Application to the Facts

Here, Plaintiff sued the County for race and marital-status discrimination. The County moved for summary judgment asserting that Plaintiff, during the entirety of the case, Plaintiff could not "point to a single comparator," *i.e.*, a correctional officer who engaged in misconduct similar to hers, yet received a discipline less severe than termination. Doc. No. 91-1 at 7. The County acknowledges that Plaintiff identified a putative white comparator, Cynthia Robinson, who had a relationship with someone who had been arrested, convicted and was on probation. *Id.*; Doc. No. 73 at 8; *see also* Doc.

No. 33 ¶29.  In addition to Ms. Robinson, Judge Antoon also considered the relevance of the disciplinary action of another white officer, Ronald Austin, who was disciplined but not terminated after admitting he had a personal relationship with a woman who was incarcerated.  Doc. No. 73 at 9.  Ultimately, Judge Antoon held:

> Plaintiff has not presented evidence that the County Corrections Department has applied its disciplinary rules differently based on race. Unlike correctional officers Robinson and Austin, who had *existing relationships* with people who were later convicted, Plaintiff developed a close relationship with a person she knew to be a convicted criminal. Plaintiff is unable to identify any Orange County correctional officer who engaged in misconduct similar to hers, yet received a discipline less severe than termination. Consequently, Plaintiff has not established a *prima facie* case of discriminatory discharge, and the County is entitled to summary judgment on Plaintiff's Title VII claim.

Doc. No. 73 at 9 (emphasis added).  Judge Antoon distinguished Plaintiff's putative comparators from her situation because the other white officers' relationships developed[5] before the individuals became incarcerated.  While Judge Antoon found this to be a significant distinction in how the County treated the "fraternizing" of the respective corrections officers *vis a vis* Plaintiff, the language of the County Corrections Department's Code of Ethics (quoted in the summary judgment order[6]) does not make this distinction such that Plaintiff should have been on notice that her Title VII race claim was frivolous or groundless.  Although Plaintiff failed to provide properly supported summary judgment evidence regarding comparators Wilbur Smith and Hershel Pipkins – "white males who had

---

[5]Plaintiff stated in her summary judgment response (Doc. No. 44 at 3) that she had met Fowler previously in 1981 and had a mutual acquaintance; however, it appears undisputed that there was no romantic attachment prior to Fowler's incarceration.

[6]The summary judgment order quoted the County Corrections Department's Code of Ethics in pertinent part as follows:
  Subsection 1.p. states that "[e]mployees will not . . . [f]raternize with inmates, clients or residents."
  Subsection 1.q. states that "[e]mployees will not . . . [c]orrespond, call or receive phone calls from inmates, clients or residents without prior written approval of your Department Manager."
Doc. No. 73 at 10 n.2 (quoting Doc. 34, Ex. 7 at 10).

relationships with known criminals" (Doc. No. 43 ¶ 29) – the County had investigated these individuals for their alleged fraternizations with current and former inmates (*see* Doc. No. 43-13, 43-14) and it was not frivolous for Plaintiff to believe that they were also putative comparators, albeit insufficiently argued to withstand the County's summary judgment motion.  Jerome Fowler, Plaintiff's brother-in-law who is a corrections officer and served as Plaintiff's union representative, identified several white correctional officers who allegedly received more favorable discipline than the Plaintiff for fraternizing with an inmate. Doc. No. 91-4 (Fowler Dep.) at 38-60; *see also* Doc. No. 91-3 (Pryor Dep.) at 43-47.

In addition, while Plaintiff's argument that she did not violate the County's fraternization policy because she did not "fraternize" with Fowler during the time that she had direct authority over him was not viable to survive summary judgment, it was not frivolous or groundless.  Judge Antoon, in applying the summary judgment standard did not reject Plaintiff's interpretation as a frivolous one, but rather found that Plaintiff had not rebutted the presumption that the County believed its legitimate interpretation (although contrary to Plaintiff's) that Plaintiff could not fraternize with any inmate incarcerated at *any* facility when it terminated Plaintiff.

The Equal Employment Opportunity Commission issued to Plaintiff a right to sue letter. Doc. No. 1 at 11-12.  The appeals referee in Plaintiff's unemployment compensation case also found no misconduct by Plaintiff, where the burden was on the County to prove Plaintiff had engaged in misconduct.  Doc. No. 43-4.  The Referee stated:

> It has not been shown that the county's rule extended to the claimant's off-duty activities with an inmate housed outside of the county.  If the employer wished to prevent affiliation by corrections officers with inmates housed in or out of the county, its rule could so state.  It further has not been shown that a reasonable person would

> have been placed on notice that an off-duty relationship with an inmate housed out of the county would violate the employer's rules.

Doc. No. 43-4 at 2. While such findings have no bearing on the merits of the case once it arrives in federal court, such a finding, following an investigation or hearing, would lead a reasonable plaintiff to believe her claims not to be frivolous or groundless and worth pursuing.

Although the County seeks to recover its fees incurred in defending against Plaintiff's FCRA claim for marital-status discrimination, the County failed to provide a breakdown, itemization, or supporting schedule showing the allocation of attorney time spent on Plaintiff's FCRA marital-status claim. The affidavit filed in support of the Motion for Attorney's Fees reports the total amount of attorneys' fees incurred "for defense of this action," without any specificity. Doc. No. 91-2 ¶ 13.

In view of the special care given to civil rights case, and the fact that there were other white corrections officers disciplined by the County less severely than Plaintiff for fraternizing (although in distinguishable circumstances) with inmates, and upon a review of all of the circumstances present here, the Court finds an award against Plaintiff to be unwarranted. While Plaintiff was ultimately unsuccessful and the case was disposed of prior to a full-blown trial on the merits, there was no finding made that the case was unreasonable or without foundation. As the Supreme Court noted in *Hughes*:

> Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, "groundless" or "without foundation" as required by *Christianburg*.

*Hughes,* 449 U.S. at 15, 16. Here, Judge Antoon found Plaintiff's putative comparators' situations were distinguishable (or insufficiently presented and therefore warranting no discussion) in opposition to the motion for summary judgment, but not that Plaintiff's claims were frivolous or groundless.

It is **respectfully recommended** that, to the extent the County seeks to recover its attorney's fees or have sanctions imposed, its Motion be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 30, 2005.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy